# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

KATINA WILSON, )
 )
       Plaintiff, )
 ) Case No. 18-CV-332-JED-FHM
v. )
 )
EAN HOLDINGS, LLC )
 )
       Defendant. )

## OPINION AND ORDER

Plaintiff Katina Wilson ("Plaintiff") asserts five claims against her former employer, EAN Holdings, LLC ("Defendant"): (1) sexual harassment/sexually hostile work environment in violation of Title VII, (2) retaliation in violation of Title VII, (3) disability discrimination in violation of the ADAAA, (4) intentional infliction of emotional distress, and (5) interference and retaliation in violation of the FMLA. (Doc. 2-1). Defendant has moved to dismiss Ms. Wilson's IIED claim pursuant to Fed. R. Civ. P. 12(c). (Doc. 16).

**I.**     **Legal Standards**

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). However, plaintiffs must plead sufficient factual allegations "to state a claim to relief

that is plausible on its face." *Id*. at 1104 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that merely "'tenders naked assertion[s]' devoid of 'further factual enhancement'" does not satisfy the pleading standard. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

## II.   Summary of the Allegations[1]

The following is a summary of Plaintiff's allegations, which are contained in her Complaint (Doc. 2-1) and must be taken as true at the dismissal stage. *See Broker's Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

Plaintiff began her employment with Defendant on May 13, 2013, as an account coordinator. (Doc. 2-1 at ¶ 12). She alleges that she began receiving unwanted advances and sexual harassment from her supervisor, Harry Colbert, starting in January 2015. (*Id*. at ¶ 13). She alleges that this harassment occurred daily and that it "included lewd comments, leering at the Plaintiff at her desk, [and] unwanted physical contact." (*Id*.). Plaintiff alleges that she made a complaint to Human Resources ("HR") concerning the harassment but that the harassment continued until Mr. Colbert was fired in May 2016. (*Id*. at ¶¶ 14-15).

Plaintiff further alleges that other male supervisors "began singling Plaintiff out, excluding her from meetings, reporting her for alleged appearance and dress code violations, and engaging

---

[1] In evaluating Defendant's Motion, the Court is <u>not</u> considering the exhibit attached to Plaintiff's Response (Doc. 18-1), as this document was not attached to or incorporated by reference in her Complaint (Doc. 2-1). *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference.").

2

in otherwise retaliatory behavior as a result of her complaints [to HR]." (*Id*. at ¶ 16). She alleges that one of these male supervisors discussed her HR complaint with another coworker and allowed the coworker to view Plaintiff's performance review. (*Id*. at ¶ 17). Plaintiff asserts that this retaliatory behavior caused her stress and anxiety that "required [her] to apply for FMLA leave for a serious medical condition." (*Id*. at ¶ 18). Specifically, she alleges that her stress and anxiety were accompanied by severe migraines and stomach issues. (*Id*. at 22). Plaintiff alleges that she sought a work-from-home position but was denied this accommodation. (*Id*. at ¶ 21). She also alleges to have sought a transfer to a different department but was told such a transfer would result in a decrease in pay. (*Id*. at ¶ 22).

Lastly, Plaintiff alleges that, upon her return from FMLA leave, she was "counseled for the incomplete work that was not completed during her leave" and "issued a poor performance rating." (*Id*. at ¶¶ 18-19). She asserts that she was also disciplined for failing to process a payment while she was on bereavement leave. (*Id*. at ¶ 20).

### III. Analysis

IIED claims are governed by the narrow standards set forth in the Restatement Second of Torts, § 46. *Gaylord Entertainment Co. v. Thompson,* 958 P.2d 128, 149 (Okla. 1998). In *Breeden v. League Servs. Corp.,* 575 P.2d 1374 (Okla.1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* at 1376 (quoting Restatement (Second) § 46, cmt. d).

To state a claim, the plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *See Schovanec v. Archdiocese of Oklahoma City,* 188 P.3d 158, 175 (Okla. 2008) (quoting *Computer Publications, Inc. v. Welton,* 49 P.3d 732, 735 (Okla. 2002)). The trial court must assume a "gatekeeper role" and make an initial determination that the alleged conduct "may be reasonably regarded as sufficiently extreme and outrageous" to maintain a claim for intentional infliction of emotional distress. *Trentadue v. United States,* 397 F.3d 840, 856 n.7 (10th Cir. 2005); *see also Gaylord*, 958 P.2d at 149.

Plaintiff asserts that her allegations of harassment and retaliation are sufficient to state a plausible claim for intentional infliction of emotional distress. The Court disagrees. The Complaint does not set forth any facts that would rise to the level of outrageousness required to set forth an emotional distress claim under Oklahoma law because the conduct alleged is not "so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *See Breeden*, 575 P.2d at 1376. Moreover, Oklahoma courts have routinely held that Title VII and other employment-related claims generally do not rise to the level of outrageous conduct necessary to support a claim of intentional infliction of emotional distress. *Daniels v. C.L. Frates & Co.*, 641 F. Supp. 2d 1214, 1218 (W.D. Okla. 2009); *see also Miner v. Mid-America Door Co.*, 68 P.3d 212 (Okla. Civ. App. 2003) (claim of intentional infliction of emotional distress was not established despite allegations of sexually explicit verbal abuse and physically threatening conduct by a supervisor); *Eddy v. Brown*, 715 P.2d 74 (Okla. 1986) (allegations of ridicule by supervisor and foreman did not amount to sufficiently outrageous conduct); *Anderson v. Oklahoma Temp. Servs., Inc.*, 925 P.2d 574 (Okla. Civ. App.

1996) (six events including lewd remarks about the plaintiff by her supervisor and embarrassing her by discussing her faults with coworkers were insufficiently outrageous); *Mirzaie v. Smith Cogeneration, Inc.*, 962 P.2d 678 (Okla. Civ. App. 1998) (allegations that employer made derogatory sexual comments about the plaintiff's fiancée, refused to allow plaintiff a day off of work to be with his wife and newborn son in the hospital, and called plaintiff in the middle of the night, browbeating the plaintiff for hours and requiring him to do unnecessary work, were not sufficiently outrageous to maintain a claim for intentional infliction of emotional distress).

The Court is not persuaded that the alleged harassment and retaliation in this case is similar to any case in which an Oklahoma court has found extreme and outrageous conduct in the workplace setting. Thus, the Court finds that Plaintiff has not stated a plausible claim of intentional infliction of emotional distress.

IT IS THEREFORE ORDERED that the Partial Motion for Judgment on the Pleadings (Doc. 16) is **granted**, and Plaintiff's IIED claim (Fourth Claim for Relief) is hereby dismissed.

SO ORDERED this 11th day of June, 2019.

_____
JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT